[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 20, 2003
THOMAS K. KAHN
CLERK

No. 02-14931
Non-Argument Calendar

D. C. Docket No. 01-00029-CV-1-MMP

LAURA SCOTT, as Parent,
Legal Guardian and Next Friend for,
KATHY BLITCH, as Parent,
Legal Guardian and Next Friend for,

Plaintiffs,

FRANKLIN JAY SCOTT, JR., a Minor,
NICHOLAS THOMAS, a Minor

Plaintiffs-Appellants,

versus

SCHOOL BOARD OF ALACHUA COUNTY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Florida

(March 20, 2003)

Before TJOFLAT, BIRCH and RONEY Circuit Judges.

PER CURIAM:

Plaintiffs Franklin Jay Scott, Jr. and Nicholas Thomas ("Plaintiffs"), then both Santa Fe High School students, filed a 42 U.S.C. § 1983 lawsuit against defendant School Board of Alachua County ("School Board"), alleging that the discipline imposed by Principal Lamar Simmons –school suspensions– for their displaying of a Confederate flag on school premises, after previously being told not to do so, violated their First Amendment right to symbolic speech. The district court granted the School Board's motion for summary judgment.

Plaintiffs appeal asserting three arguments. They first argue that their school suspensions were based on an inadequate showing of a material and substantial disruption and thus violated the Court's decision in *Tinker v. Des Moines Indep. Cmty. School Dist.*, 393 U.S. 503 (1969). Next, plaintiffs argue that the School Board's "after-the-fact justifications" for Principal Simmons' unwritten ban of Confederate flags were pretextual and thus expose the School Board to monetary liability. Third, plaintiffs assert that genuine issues of material fact exist as to whether: (1) the School Board was aware or was deliberately indifferent to Principal Simmons' unwritten ban of Confederate flags and (2) the racial impact of a prior disruption in the high school was adequate to precipitate Principal Simmons' unwritten ban.

2

After careful review of the briefs, record, and relevant case law, we affirm the decision of the district court, holding that Principal Simmons' unwritten ban of Confederate flags on school grounds was not an unconstitutional restriction of the plaintiffs' First Amendment rights. As such, there is no actionable § 1983 claim in this case. Having decided that, we need not consider whether the Board was aware or was deliberately indifferent to Principal Simmons' unwritten ban of Confederate flags.

Prior to setting forth the applicable portions of the district court's well-reasoned opinion, we note that this First Amendment freedom of expression case stands against the unique backdrop of a public school. Although public school students' First Amendment rights are not forfeited at the school door, those rights should not interfere with a school administrator's professional observation that certain expressions have led to, and therefore could lead to, an unhealthy and potentially unsafe learning environment for the children they serve. Short of a constitutional violation based on a school administrator's unsubstantiated infringement on a student's speech or other expressions, this Court will not interfere with the administration of a school.

The district court properly determined that Principal Simmons' unwritten ban on displaying the Confederate flag was not a violation of the plaintiffs' First

Amendment rights. The applicable portions of the Order of District Judge Maurice

M. Paul giving the reasons for this decision, which we accept, are as follows:

> Simply put, the defendant's second argument is that the ban on Confederate symbols was appropriate based on the potential disruption that the displaying of Confederate symbols would likely create. After a careful analysis of Denno v. School Bd. of Volusia County, 218 F.3d 1267 (11th Cir. 2000), Tinker v. Des Moines Independent Comm. School Dist., 393 U.S. 503 (1969) and Bethel School District v. Fraser, 478 U.S. 675 (1986), the Court concludes that school officials can appropriately censure students' speech under either of the following two theories. First, from the Tinker case, school officials are on their most solid footing when they reasonably fear that certain speech is likely to "appreciably disrupt the appropriate discipline in the school." Denno, 218 F.3d at 1271, citing Tinker, 393 U.S. at 514. Second, from Fraser, even if disruption is not immediately likely, school officials are charged with the duty to "inculcate the habits and manners of civility as values conducive both to happiness and to the practice of self-government." To do so, they must have the flexibility to control the tenor and contours of student speech within school walls or on school property, even if such speech does not result in a reasonable fear of immediate disruption. Denno, 218 F.3d at 1271. As the Supreme Court stated in Fraser:

>> Surely it is a highly appropriate function of public school education to prohibit the use of vulgar and offensive terms in public discourse. Indeed, the "fundamental values necessary to the maintenance of a democratic political system" disfavor the use of terms of debate highly offensive or highly threatening to others. Nothing in the Constitution prohibits the states from insisting that certain modes of expression are inappropriate and subject to sanctions. The inculcation of these values is truly the "work of the schools." Tinker, 393 U.S. at 508, 89 S.Ct. at 737.... The determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board.

4

The process of educating our youth for citizenship in public schools is not confined to books, the curriculum, and the civics class; schools must teach by example the shared values of a civilized social order. Consciously or otherwise, teachers--and indeed the older students--demonstrate the appropriate form of civil discourse and political expression by their conduct and deportment in and out of class.

[478 U.S.] at 683, 106 S.Ct. at 3164.

In the case sub judice, however, the above language merely begs the question. The real difference of opinion in this case, of course, is whether the symbol should be considered "vulgar and offensive" at all. That is, some say the symbol is not offensive if not intended to be offensive. Others say it is innately offensive, while still others argue that, even if the symbol is not intended to be offensive or innately offensive, it is still dangerous because it is perceived as offensive by so many people.

This debate, which is being played out in state legislatures, newspaper editorial columns and classrooms across the South is exemplified in the expert witness disclosures offered by the two sides in this case. The plaintiffs' experts plan to testify that "the Confederate battle flag is not a symbol of racism, but rather a historical symbol embodying the philosophical and political principals of a decentralized form of government in which states and local government retain all powers not expressly ceded to the centralized federal government under the constitution" and that thus the flag is merely "a symbol of southern heritage." (Disclosure of proposed expert Marshall DeRosa, PhD, doc. 19). The defendant's expert plans to testify that "from its inception, the confederacy was a political movement dedicated to the preservation of the institution of slavery. Therefore from its inception, the confederacy and its symbols represented approval of white supremacy" and that "the confederate flag is a symbol that has acquired numerous racist associations to the point that the flag itself has understandably come to

be perceived as a racist symbol." (Disclosure of proposed expert Fitz Brundage, PhD, doc. 24).

The problem, of course, is that both of them are correct. And they are correct not only in describing the different emotions this symbol evokes, but also in connoting the depth of those emotions through their choice of words. Words like "symbol", "heritage", "racism", "power", "slavery", and "white supremacy" are highly emotionally charged and reveal that for many, perhaps most, this is not merely an intellectual discourse. Real feelings -- strong feelings -- are involved. It is not only constitutionally allowable for school officials to closely contour the range of expression children are permitted regarding such volatile issues, it is their duty to do so. The Court thus agrees with Denno in its approval of the following language from the United States District Court in Kansas:

> Part of a public school's essential mission must be to teach students of differing races, creeds and colors to engage each other in civil terms rather than in "terms of debate highly offensive or highly threatening to others."... There is no evidence that the school district has attempted to suppress civil debate on racial matters, but the district had concluded that the display of certain symbols that have become associated with racial prejudice are so likely to provoke feelings of hatred and ill will in others that they are inappropriate in the school context.

Denno, 218 F.3d at 1273, citing West v. Derby Unified School Dist. No. 260, 23 F. Supp.2d 1223, 1233-34 (D. Kan 1998), *aff'd* 206 F.3d 1358 (10th Cir. 2000)(quoting Fraser, 478 U.S. at 683).

In light of the above principles, the Court finds that the ban on the display of Confederate symbols was not unconstitutional. School officials presented evidence of racial tensions existing at the school and provided testimony regarding fights which appeared to be racially based in the months leading up to the actions underlying this case. Additionally, one only needs to consult the evening news to understand

the concern school administrators had regarding the disruption, hurt feelings, emotional trauma and outright violence which the display of the symbols involved in this case could provoke. Therefore, under both Tinker and Fraser, the school administrators did nothing wrong in banning the display of Confederate flags on school property.

In sum, the school administrators did *not* violate the plaintiffs' constitutional rights by banning the display of Confederate flags on school grounds and subsequently enforcing the ban by suspending them. Having found no constitutional right violated, the plaintiffs have failed to set forth a prima facie case for § 1983 relief. The district court properly granted the defendant's motion for summary judgment.

AFFIRMED.